## In re McKenzey's Appropriation.

The recognisance of a sheriff and his sureties, taken pursuant to the provisions of the act of the 13th of April, 1834, is a lien, as well on their lands as upon their goods and chattels; and where said lands are sold at a judicial sale, they pass into the hands of the purchaser subject to the lien created by the recognisance.

*June* 10.   THIS was an appeal by creditors, who claimed under the official recognisance of the sheriff, from the decree of the Court of Common Pleas of Perry county, appropriating the money raised by a judicial sale of John McKenzey's real estate.

The facts of the case, as agreed upon by the parties, and upon which the court below made the appropriation, subject to appeal by

any party in interest, were the following :—In October, 1841, Alexander Magee was elected sheriff of Perry county, and on the 26th day of October, 1841, he entered into a recognisance with John McKenzey and eight others, as his sureties, in the form prescribed by the act of Assembly. The recognisance was in the sum of $10,000, and was duly entered of record, according to law. In 1845, the real estate of John McKenzey, one of the sureties as aforesaid, was sold by the sheriff of Perry county, under judicial process issued, and directed to him ; and the money thus raised, paid into court for appropriation. It appeared, there was a suit pending on the bond of sheriff Magee, in Perry county, of November Term, 1846, and that there were other claims outstanding against the estate of Alexander Magee, who was then deceased, and against his sureties. The Carlisle Bank recovered a judgment against John McKenzey, at August Term, 1842, and another judgment against the same, at January Term, 1843. The purchaser of the land, and the creditors of Alexander Magee, late sheriff, claimed that the money in court should be applied to the recognisance ; and the Carlisle Bank and the creditors of John McKenzey claimed, that it should be appropriated to the payment of the said judgment ; and this was the question submitted to the court below for decision. Whereupon, after argument, the court ordered the money to be paid to the judgment creditors of McKenzey, in the order of their priority. An appeal was thereupon taken to this court by the creditors, who claimed that the money in court should be applied to the recognisances, and the following error assigned :

The court erred in appropriating the money to the judgment creditors of McKenzey, to the exclusion of the creditors who claim upon the official recognisance of the sheriff.

*Watts*, for appellants.—The features of this question are new, and they must be decided upon grounds of expediency. Is it not better that we should keep in view the often repeated legal policy of keeping estates subjected to judicial sale, untrammeled by liens ? If the lien of a sheriff's recognisance be not divested by a judicial sale, it either precludes all sales of the estates of the recognisors, or subjects them to the intolerable sacrifice which would necessarily result from a sale of them, subject to the uncertainty of the extent of a sheriff's official defalcation. It will not do to decide, that the estate of a sheriff's surety shall not be subject to a sale for his debts, and if sold, subject to a lien of twice its value which may eventually be payable or not payable, as the accidental result of the sheriff's

O

official duty may be well or ill performed; all competition is out of
the question, and the estate falls into the hands of some one willing
to gamble upon the result.   We hold that a judicial sale will divest
any lien which is susceptible of being reduced to certainty of
amount, *at any time*, by calculation.   4 Rawle, 447; 2 Rawle, 166.
It is said in 4 Watts, 396, that it is no reason that an estate should
be sold with the encumbrance of a lien, because the sheriff had no
means of ascertaining its amount; for the court will adopt means
by suffering the party who claims it to take the money out, upon his
giving security to refund.  It is better for the debtor to have the
money retained, than to have his property sacrificed; better for the
creditor to get his money at a remote period, than not get it at all.
From every consideration, we think it is expedient that the prin-
ciple should be settled, that the land should be sold divested of the
lien.

*Reed*, for appellees, cited act of March 28, 1803, sec. 4, and act
of April 15, 1834; Park & Johns. Dig. 451, sec. 13, and Pur. Dig.
971, to show the nature and effect of a recognisance upon the lands,
tenements, and hereditaments of a sheriff and his sureties.

Suits to be brought thereon, by every person injured.   He also
cited act of June 14, 1836, secs. 1, 2, 3, 4, 5; Pur. Dig. 137, as to
the action on bonds with penalties between individuals, and the pro-
ceedings and practice thereon; and section 6th, ibid., as to suits
on sheriffs' bonds and obligations, and the bonds of executors, ad-
ministrators, &c., and the proceedings and practice thereon.  Judg-
ment to be entered for the whole penalty in favour of the Common-
wealth, and in favour of the plaintiff for the amount of his damages.
The judgment for the penalty to remain for the use of subsequent
claimants.   The judgment for the penalty not to be a lien against
the real estate of the defendants, unless when rendered for the debt
of the Commonwealth; but the judgment for the plaintiff's damages
to be a lien on the real estate of the defendants, to the amount
thereof.   He argued, that a judgment confessed, sum to be ascer-
tained by the prothonotary, was not a lien on a defendant's land,
until the sum was fixed.   16 Serg. & Rawle, 347.   In Hellman *v.*
Hellman, 4 Rawle, 447, 448, Justice Kennedy, in delivering the
opinion of the court, says :—" Wherever the real amount or value
of the lien or charge upon the land, is capable of being reduced at
any time to a sum certain in money, &c., there is no sufficient rea-
son for distinguishing it from the case where it is a sum certain and
payable at or before the sale.   It is not like the case of an annuity

or rent-charge upon the land during the life of a party. In Luce v. Snively, 4 Watts, 397, the general rule is laid to be, that purchasers at a judicial sale fairly made, take and hold the land free and discharged from existing liens of the person as whose land it is sold, as well as from all liens of the previous owners of the same. In Duncan v. Reiff, 3 Penn. Rep. 363, it was held, that a lien in favour of the Commonwealth is not discharged by a judicial sale ; as such sales are subject to such liens.

In Mentzer v. Menor, 8 Watts, 276, it is ruled, that a judicial sale of land does not divest it of the lien of a recognisance, entered into to secure the widow's interest in a proceeding in partition in the Orphans' Court, either as to amount payable to the widow during her lifetime, or to her heirs after her death.  He referred to The Corporation v. Wallace, 3 Rawle, 127, as settling the law in 8 Watts, 278.  In this case, Mr. Chief Justice Gibson says :—" Where an encumbrance cannot for any cause be satisfied out of the purchase money, it remains a charge on the land."

In 8 Watts & Serg. 445, and 3 Watts & Serg. 28, it is decided, that a sale divests liens definite and certain in amount.

The alleged encumberance cannot be paid out of the purchase money.  There is no one to receive it.

The law has fixed the sort of security a sheriff must give, and no one can change it.  The law would be unjust to take the estate of the bail, where there is no default in his principal.  The bail is entitled to hold and use his estate, until the default of the sheriff requires him to surrender it.

June 15.  Rogers, J.—A judicial sale divests all liens, whether general or specific.  16 Serg. & Rawle, 410, Barnet v. Washebaugh ; 1 Penn. Rep. 96, McLanahan v. McLanahan ; 3 Rawle, 109, The Presbyterian Corporation v. Wallace.  To this general principle there are many exceptions ; and this, it strikes me, is one.  The sheriff's recognisance is taken by virtue of the act of the 13th of April, 1834 ; which provides, that every sheriff, before he shall be commissioned, or execute the duties of his office, shall enter into recognisance, and be bound in a bond with at least two sufficient sureties, in the sums and manner therein mentioned.  The act provides the form of the recognisance, and makes it a lien, as well on the land, as goods and chattels of the sheriff, and bail.  It is taken for the use of the several suitors and parties interested in the execution of writs, and for the well and faithful execution and performance of all and singular the trusts and duties of his office  To

extend, therefore, the scope of the decisions referred to, so as to embrace the lien of a sheriff's recognisance, will defeat or greatly impair the wise and salutary designs plainly indicated in the act, by converting real into personal security. It will, moreover, be extremely unjust to sureties whose property will be diverted from the payment of their own debts and locked up in court, where there has not, and perhaps never will be, any breach of the recognisance whatever; or, in other words, it must remain to answer a contingency which may never happen. It is true, cases may occur where the lien of the recognisance may affect the price of the lands when sold at a judicial sale; but this is a contingency which can occur but seldom, and, moreover, one to which the surety has voluntarily exposed himself; and his convenience and benefit must yield to the public good. It never entered into the contemplation of either the court or the legislature, that a lien expressly created for a great public object should be defeated or impaired by any judicial sale whatever.

In the case before us, as is justly remarked by Judge Hepburn, there is no definite sum fixed, or amount capable of being ascertained; nor is there any one in being to whom any part of the fund in court can be paid. It, therefore, comes within the principle settled, that when an encumbrance cannot for any cause be satisfied out of the purchase money, it of course remains a charge on the land. The lien must be definite in its amount, certain in its application, or capable of being made so. 3 Rawle, 129, The Corporation v. Wallace; 4 Rawle, 447, 3 Watts & Serg. 34.

The effect of the doctrine contended for by the plaintiff's counsel, is to impound the whole purchase money, and divert the proceeds from the creditors of the surety, to the injury of creditors, the surety, and those who may have an interest in the recognisance; a proposition too unjust to be for a moment entertained. If retained under the direction of the court, the fund must be unproductive, to the great injury of both creditors and debtor. If placed out on real security as suggested, it may not be forthcoming to answer the exigencies of those who have claims upon the fund.

The question, viewed under whatever aspect, is surrounded with difficulties and inconveniences, which can only be avoided by holding, that the land passes into the hands of the purchaser, subject to the lien created by the recognisance.

Decree affirmed.